In re KEHN RANCH, INC., Debtor.

The CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

KEHN RANCH, INC., Edwin E. Kehn, A. Maxine Kehn, Clark Kehn, aka Edwin C. Kehn, Bonnie L. Kehn, First National Bank of Minneapolis, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., A Minnesota Professional Corporation, John C. Devine, dba Devine's Redi-Mix, Fullerton Lumber Company, Harley L. Frasch, Dr. J.C. Marcum, Duane Hannum, dba Hannum Trucking, Marvin Reynolds, and Gregory County, South Dakota, Defendants.

Bankruptcy No. 382–00038.

Adv. No. 382–0074.

United States Bankruptcy Court, D. South Dakota.

Aug. 1, 1983.

Thomas C. Adam and Brent A. Wilbur, Pierre, S.D., for plaintiff The Connecticut Mut. Life Ins. Co.

Rolfe A. Worden, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, Minn., for defendants Kehn Ranch, Inc., Edwin E. Kehn, A. Maxine Kehn, Clark Kehn, aka Edwin C. Kehn, Bonnie L. Kehn.

Melvin I. Orenstein, Lindquist & Vennum, Minneapolis, Minn., for defendant First National Bank of Minneapolis.

Douglas R. Kettering, Yanton, S.D., for the unsecured creditors committee of the Bankruptcy Estate of Kehn Ranch, Inc., debtor.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

On March 1, 1983, the Court held a trial in the above-entitled matter brought on by The Connecticut Mutual Life Insurance Company's (Connecticut's) complaint for relief from the automatic stay and a hearing on their objection to the fees of Kehn Ranch, Inc.'s (Kehn's), appraiser. During the trial and hearing, the parties introduced extensive appraisal testimony concerning the value of real property and improvements known as Kehn Ranch, Inc. At the close of the trial and hearing, the Court took the issues of valuation and the reasonableness of the fees of Kehn's appraiser under advisement. This Court's decision is based on all of the written and oral testimony received at the March 1, 1983, trial and hearing and a thorough analysis of the same.

First, the Court will address the value of the real property. The analysis will then proceed to the valuation of the improvements and, finally, the reasonableness of the fees of Kehn's appraiser.

## I. THE REAL PROPERTY

The Kehn ranch is composed of approximately 14,212.80 acres of land that are located in Gregory County, South Dakota. Most of the ranch is grassland (12,172.80 acres), with only 780 acres designated as farmground, 945 acres of native hay, 295 acres of potentially tillable hayland, and 20 acres that are used for building sites. Access to the ranch is good via a combination of blacktop and graded gravel roads. The total 14,212.80 acres is a contiguous economic unit. There is an ample supply of water as evidenced by the existence of eight artesian wells, nineteen shallow wells, forty-six stock dams, and at least one live creek that runs year-round. An intra-pasture water system that uses underground pipes further

enhances the availability of fresh water from existing wells.

Soil survey reports indicate that over 90 per cent of the property has Class VI or VII soils which are considered good for grassland but unsuited for cultivation. The ranch is fenced and cross-fenced with three- and four-strand barbed wire which is in good overall condition. With the exception of the sand creek pasture, the existing fencing and pasture system facilitate the effective and efficient management of the pasture land. The ranch has numerous wooded draws that contain oak trees which provide excellent protection for cattle during hot summer days and cold, windy winter weather. Currently, the Kehn ranch leases some parcels of Indian grazing land. Although potentially very valuable, the actual value of these leases is at best tenuous and, thus, their value was not included in either of the appraisals submitted to the Court.

The ranch is located about 125 miles from Sioux Falls, South Dakota, which is currently recognized as the largest livestock marketing terminal in the United States. Moreover, the property lies within close proximity to the Nebraska Corn Belt, making large quantities of high quality feed available at relatively reasonable prices. Most impressively, however, is the fact that the average annual rainfall in the area is 22 inches per year. During the oral testimony at the trial, the appraisers for both parties agreed that the highest and best use of the Kehn ranch is its present use as a cattle ranch. Both appraisers further agreed that in the context of its use as a ranch, the property was very impressive.

## A. CONNECTICUT'S APPRAISAL

Connecticut's appraisal uses three separate methods to compute the market value of the Kehn ranch real property. These include the cost approach, the income approach, and the market approach. The market approach, however, is used for the limited purpose of calculating a "multiplier" value to be used in the income approach analysis.

The cost approach estimates the market value of the various types of land, i.e., cropland, range, hayland, etc. The prices of the particular types of property are established from a range of sales that is computed from sales in the area as supported in the land market. Based on the sales information shown in Exhibit "B" of Exhibit No. 6, the Connecticut appraisal concludes that the Kehn ranch cropland has a market value of $375. per acre, the alfalfa $325. per acre, the old hayland $200. per acre, and the range $165. per acre. The total value of the real property without improvements, based on this method, is $2,535,470.

■ The $2,535,470. value relies on the premise that area land values, when adjusted for such variables as time of sale, quality of soil, size of the property, and method of financing, have fallen to a level roughly equivalent to those received in 1979. The adjusted sales compiled in the competing appraisal submitted by the debtor, Kehn Ranch, Inc., however, especially the 1982 sales, do not support the alleged 15 per cent to 30 per cent reduction in 1983 area land values contemplated by Connecticut. Therefore, the Court rejects the market price proposed by Connecticut under the cost approach method.

The Connecticut appraisal uses the so-called market approach to value for the limited purpose of calculating a "multiplier" to be used in the income approach method. For purposes of the instant appraisal then, the reliability of the cost and income approaches is inextricably tied together. The reliability and validity of one is necessarily dependent upon the other.

The "multiplier" calculated through the market approach supposedly shows a rough relationship between the gross income of property and its sales price. The market approach compares attributes of different pieces of land and adjusts prices for such variables as size, location, access, topography, and productivity. Because Connecticut could not find area sales of ranches of a similar size or of a similar productivity to the Kehn ranch, they elected to use data from a relatively wide geographic area reflecting the sales of large ranches. Basically, the multiplier derived from the market

approach is the number of years of gross income it takes to recover the sales price of a particular piece of property. Gross income, of course, depends on a variety of factors, including the productivity of the land and commodity prices.

The major drawback of any multiplier calculated on the basis of the market approach is the difficulty of accurately determining the income generated or to be generated by a particular piece of property. Although the current price, for example, of alfalfa may be $40. per ton and fat steers may sell for $60. per pound, commodity prices have been very volatile over the years. It is reasonable to assume, as the multiplier does, that there is a relationship between income produced by land and its price. Computing the amount of that income, however, is highly dependent on commodity prices over a period of time, the management contemplated and implemented by the owner or purchaser, and income-related items such as the availability of tax shelters.

■ Given the existence of a multiplicity of income variables that need to be estimated to determine a multiplier and the individualistic nature of many of those variables, this Court is unwilling to accept the 7.5 multiplier factor arrived at in the Connecticut appraisal. Consequently, for similar reasons, the Court is also unable to find the market price of $2,625,000. calculated by Connecticut using the income method, which employs the 7.5 multiplier derived by Connecticut, reliable or persuasive.

### B. KEHN'S APPRAISAL

Kehn's appraiser utilized two approaches in estimating the market value of the real property. The first method is based on the price paid for other ranches per animal unit of carrying capacity compared to the subject property. The second method of valuation is the market data approach which involves comparing smaller acreage land sales in the Gregory County area to the subject property on a per acre basis.

The very foundation of the price per animal unit of carrying capacity method hinges on the historical animal carrying capacity of the Kehn ranch. An animal unit is the amount of forage that is needed to maintain a cow with a calf for one year. The higher the carrying capacity of a ranch, the larger the number of animal units that it can maintain. The logic behind the method assumes that a buyer would pay the same or a similar price per animal unit for two competing ranches in spite of other variables. This method tends to approach value on the basis of productivity and thus allows otherwise diverse properties to be compared.

■ A reliable and accurate comparison, however, is dependent upon the reliability and accuracy of the historical carrying capacity of the property being appraised. In the instant case, the estimated carrying capacity of the Kehn ranch is only based on records for 1981 and 1982. Two years is just too short a period to establish a historical carrying capacity that this Court could deem as reliable. This is especially true in light of allegations of overgrazing which are not completely unsubstantiated. Therefore, Kehn's appraised market value of $5,000,000. based on the price per animal unit of carrying capacity is rejected.

The other method of valuation employed by Kehn's appraiser is the market data approach to value. As mentioned earlier, recent sales of agricultural properties in Gregory County are analyzed, paying close attention to differing characteristics. The sales relied upon in the Kehn appraisal may be found on pp. 29–34 of Kehn's Exhibit "A." Based on these sales, the Kehn appraisal concludes that the farmground has a market value of $400. per acre, the tillable hayland $300. per acre, the native hayland $250. per acre, the grassland $200. per acre, and the building site property $500. per acre. Using these values, the total price of the 14,212.80-acre ranch is $3,081,310.

■ In reviewing the land sales listed on pp. 29–34 of Kehn's Exhibit "A," the Court finds: (1) that the $400. per acre value of the farmland is supported by sales Nos. 1 and 6; (2) that the $300. per acre value of the tillable hayland is supported by sale No. 5; (3) that the $250. per acre value of the

native hayland is supported by sale No. 5; (4) that the price of $200. per acre for the grassland is supported by sales Nos. 1, 4, 5, 6, 8, and 11; and (5) that the $500. per acre value of the building site property is supported by the photographs in the addendums to Kehn's Exhibit "A." Moreover, the Court further finds that all of the written and oral testimony submitted by Kehn supports the foregoing land classifications and their respective valuations. The Court, however, finds the 15 per cent assemblage fee proposed by the Kehn appraisal, which totals $462,197., to be speculative and, therefore, declines to adopt it.

Based on the foregoing findings, the Court concludes, for purposes of the instant trial, that the market value of the unimproved real estate known as Kehn Ranch, Inc., is $3,081,310. This amount does not reflect the value of an undivided ⅛'s interest in the West Half of Section 11–96–70. The Court further rejects any other proposed values because they are less realistic and reliable in light of all the evidence.

## II. THE IMPROVEMENTS

Improvements on the ranch are found on three building sites, one of which is unoccupied. The main ranch buildings are located on the southern portion of the ranch and include one large modern home, two smaller modern homes, a partially completed bunkhouse, a large cattle shed, a large machine shed, and several storage and miscellaneous sheds, in addition to various sundry items including, but not limited to, a radio tower, septic systems, board fences, feed bunks, and an electric generator.

The north ranch was constructed in 1967 and consists of two modern homes, a calving barn, a barn, a scale house, machine shed, storage shed, old bunkhouse, and a 100-foot commercial radio tower. In addition, there are various corrals and wood fences. The third building site, known as the "Wilsey Buildings," is unoccupied. This site includes an older home, storage shed, barn, and pole barn.

Although the competing appraisals use different valuation services to assess the value of the improvements, they both use a cost new approach with a related allowance for depreciation. The Kehn appraisal concludes that the total value of all improvements after allowance for depreciation is $392,500. The Connecticut appraisal proposes a depreciated improvement value of $312,000. Moreover, the Connecticut appraisal convincingly argues that in the context of a grazing operation, there are too many dollars invested in housing space.

Consequently, the Connecticut appraisal maintains that the ranch is functionally overbuilt with improvements that do not contribute directly to the income-producing ability of the property. Even the competing Kehn appraisal, submitted in behalf of the debtor, estimates the depreciated value of all ranch housing at $246,500. This represents 62.8 per cent of the total depreciated value of ranch improvements. After reviewing other improved ranch properties which are grass intensive, the Connecticut appraisal concludes that the depreciated value of the Kehn ranch improvements should be reduced by $8.75 per acre to account for functional obsolescence resulting from excessive housing. The Court adopts the $8.75 per acre deduction for excessive housing for the reasons stated in Connecticut's appraisal at pp. 34–35. Having already concluded that the Kehn ranch is composed of approximately 14,212.80 acres, the Court concludes that $124,362. should be deducted from the depreciated value of the improvements to reflect the Court's acceptance of the "overbuild" rationale (14,212.80 × $8.75 = $124,362.).

After examining all the evidence concerning the value of the improvements, including the numerous photographs submitted as exhibits, the Court finds that the estimated depreciated value of all the improvements on Kehn Ranch, Inc., to be most accurately reflected by the Kehn appraisal figure of $392,500. This amount reflects a value of $267,000. for the main ranch improvements, $117,500. for the north unit, and $8,000. for the vacant site. The Court further finds, however, that the depreciated value of $392,500. does not adequately reflect the functional obsolescence caused by

excessive dollars invested in housing and, therefore, finds that $124,362. should be deducted to properly account for the obsolescence factor. Accordingly, the Court concludes that the depreciated value of all the improvements on Kehn Ranch, Inc., is $268,138. ($392,500. - $124,362. = $268,138.).

### III. CONCLUSION

After carefully weighing all the evidence submitted in the above-entitled matter, the Court concludes, for purposes of the instant trial, that the fair market value of the real property with improvements known as Kehn Ranch, Inc., is $3,349,448. ($3,081,310. + $268,138. = $3,349,448.). The Court will enter an appropriate order.

### IV. THE OBJECTION TO THE FEES OF KEHN'S APPRAISER

The Court entered an order on January 25, 1983, authorizing Kehn Ranch, Inc., to employ Appraisal Consultants, Inc., of Minot, North Dakota. The order fixed the maximum compensation allowable at $13,-650. for the preparation of the appraisal report and an additional fee of $600. per day, plus expenses, for Darrell Rasmuson, President of Appraisal Consultants, Inc., and an additional $350. per day, plus expenses, for other staff members' time in connection with pre-trial and trial consultations. On January 25, 1983, the Court received a letter from Connecticut's counsel objecting to the fee suggested for Kehn's appraiser (Appraisal Consultants). This letter was treated as a motion and eventually set for hearing on March 1, 1983, in conjunction with the trial on Connecticut's complaint for relief from the automatic stay.

In considering the reasonableness of the fees of Appraisal Consultants, Inc., the Court has examined the record and found it to be sparse, at best. The letter from Connecticut's counsel objecting to the appraisal fee describes the fee as "clearly exorbitant" and "clearly excessive." The same letter alleges that Appraisal Consultants, Inc., will receive about five times the fee that Connecticut would be required to pay its appraiser. At the March 1, 1983, hearing on the objection to the fees, Connecticut's

counsel characterized the appraisal fee in question as "unconscionable" and exclaimed that he has never seen an appraisal fee so high. Counsel for Kehn Ranch, Inc., argued that the fee was justified because Appraisal Consultants, Inc., had done a first-class job.

Doubtless, the burden of proving that the appraisal fees of Appraisal Consultants, Inc., are excessive is on the objecting party, Connecticut. Conclusionary adjectives such as "exorbitant" and "excessive" fall short of the required burden. Connecticut paid its appraiser $3,200. to complete the appraisal report and $300. to $450. per day, plus expenses, for pre-trial and trial consultations. Connecticut's appraiser certainly did a competent job. Indeed, the Court's opinion on this matter reflects some of the conclusions found in that appraisal. A close examination, however, of the qualifications of the staff of Appraisal Consultants, Inc., and of the kind of services they performed clearly reveals that the competing appraisals can be distinguished. Consequently, the fact that Connecticut's appraiser received a lower fee for appraising the Kehn ranch falls short of establishing the unreasonableness of Appraisal Consultants, Inc.'s, fees.

Mr. Darrell Rasmuson, the principle of Appraisal Consultants, Inc., who conducted or supervised the appraisal of the Kehn ranch, is a Senior Real Estate Analyst (SREA). As of January 1, 1977, fewer than 600 professional appraisers in the United States and Canada have been able to meet the standards necessary to become an SREA. Connecticut's appraiser is not an SREA. Mr. Rasmuson is also a member of the American Institute of Real Estate Appraisers and thus entitled to the designation of being an MAI. Connecticut's appraiser is not an MAI appraiser. Appraisal Consultants, Inc., used an additional appraiser for the Kehn ranch job, Mr. Wade Iverson. Connecticut's appraisal was conducted by only one appraiser. Mr. Rasmuson has been in the appraisal business since 1952. Connecticut's appraiser has been in the business for about five years. Appraisal Consultants' list of representative clients is long

and impressive. Clients include numerous financial institutions, governmental entities, utilities, corporations, and individuals. Finally, Appraisal Consultants, Inc., took numerous aerial photographs and performed an aerial inspection at the Kehn ranch, while Connecticut's appraiser did not.

The Court is not demeaning in any way the qualifications of Connecticut's appraiser nor the quality of his work. The Court means that the credentials of Appraisal Consultants, Inc., and the kind of work performed by them as relates to Kehn Ranch, Inc., are enough different from those of Connecticut's appraiser to preclude the Court from finding that the fee of Appraisal Consultants, Inc., is per se unreasonable. In short, on the basis of the instant record, the Court is both unwilling and unable to conclude that the fee of Appraisal Consultants, Inc., outlined in the Court's January 25, 1983, order, is excessive or unreasonable. Accordingly, Connecticut's objection to the fee must be and is overruled. The Court will enter an appropriate order.

The above constitutes the Court's Findings of Fact and Conclusions of Law.